## Hugh P. Jackson *vs.* Choquette & Co. Inc.

APRIL 20, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is an action of trespass on the case for negligence arising from a collision between plaintiff's automobile and defendant's truck at the intersection of Gordon and Potters avenues in the city of Providence. The case was tried without a jury before a justice of the superior court who decided for the plaintiff and awarded damages in the sum of $750. Thereafter each party brought the case to this court on a separate bill of exceptions. The respective parties press only the following exceptions, all others being expressly waived. Under its exceptions defendant contends that the trial justice erred in finding, first, that the accident was caused solely by negligence on the part of defendant's driver; and secondly, that the recurrence of plaintiff's hernia was attributable to the accident. The only exception pressed by the plaintiff is that the damages are inadequate for reasons which will later appear.

A brief summary of the evidence is sufficient for our purposes. On January 3, 1949 shortly before noon plaintiff

was operating a 1936 Chrysler sedan southerly on Gordon avenue while Francis J. Flynn, defendant's employee, was driving a three-quarter ton truck easterly on Potters avenue. The two vehicles approached the intersection of those highways, each 24 feet wide, at an estimated speed of about 20 to 25 miles an hour. There were no police stop signs to control traffic on either highway at that intersection. With the exception of some snow on the ground, weather and traffic conditions were good.

The operators of the two vehicles were the only persons to testify as to how the accident happened. Plaintiff's testimony in effect was that he came to a complete stop at the northwesterly corner of Gordon and Potters avenues; that seeing no vehicles on Potters avenue, he started to cross and did cross about one half of the intersection when he saw defendant's truck, which was then some 75 feet away, coming towards him from his right; that under such conditions he continued on his way until his automobile was partially in Gordon avenue to the south of the intersection when the truck "instead of going straight * * * cuts into Gordon Avenue on me, and that is the time that we collided."

On the other hand Flynn, the driver of defendant's truck, testified that when he was about 75 feet from the intersection he first saw plaintiff's automobile in motion "right at the intersection," at which time he blew the horn and reduced his speed to 10 or 15 miles an hour; that as plaintiff proceeded across the intersection, without stopping, he jammed the brakes on when he was 10 or 15 feet from him; and that, because of snow on the ground, he skidded 4 or 5 feet to his right with the result that the front of the bumper on his truck struck the right front side of plaintiff's automobile when the latter vehicle was three quarters of the way across the intersection.

We have often said that there is no rule of general application for collisions between motor vehicles at street intersections. Whether or not there is liability depends

upon the facts of each case viewed in the light of accepted principles of law. *Andrews* v. *Penna Charcoal Co.*, 55 R. I. 215; *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co.*, 58 R. I. 451. Furthermore, the fact that a party may have the right of way at an intersection does not excuse him from the charge of negligence if he exercised that right in the face of an apparent danger. *Houghton* v. *Baillargeon*, 53 R. I. 475.

A reading of the transcript in this case clearly shows that the evidence on the issue of liability was highly conflicting and irreconcilable. Since there was no evidence corroborating the testimony of the plaintiff or of defendant's driver, their respective credibility became a question of controlling force, the determination of which question could reasonably lead to different and opposite conclusions. In contending that neither defendant's negligence nor plaintiff's due care had been established by a fair preponderance of the evidence, defendant assumes that plaintiff's version of the accident was so improbable as to be unworthy of credence. The trial justice, who had the advantage of observing the two drivers while testifying, believed otherwise.

A careful examination of his decision, in which he fairly reviewed and commented on the conflicting testimony of the two drivers, shows that he did not overlook or misconstrue any material evidence on the issue of liability; and further that the inferences which he drew from such evidence were neither unjustified nor unreasonable. Under our well-established rule governing the weight that will be given to such a decision in this court we cannot say that in the circumstances of record the trial justice was clearly wrong in deciding for the plaintiff on the issue of liability. Defendant's first exception is therefore overruled.

Under its only other exception defendant contends that the award of damages for a hernia is not warranted by the evidence. It points out, among other things, that the plaintiff had been operated on for a hernia in 1942; that

thereafter he had engaged in heavy work; that at the time of the accident he did not claim either to defendant's driver or to a police officer who came upon the scene shortly after the occurrence that he sustained such injury; that he said nothing about that condition to his doctor until some few days later; and that the trial justice misconceived the evidence when he stated in his decision that there was "absolute testimony" that the hernia resulted from the accident.

The weakness of such contention is that it excludes almost to the point of complete elimination the testimony of Dr. Francis V. Garside, the only medical witness in the case. Called as a witness by the plaintiff, Dr. Garside testified that he had successfully operated on the plaintiff for a left inguinal hernia in 1942 and that since that time the latter had never complained of any distress or pain in that region although the doctor had often treated him for various other ailments up to the time of the accident. Doctor Garside's opinion was that the recurrence of the hernia could be the result of the accident, meaning thereby that he found such causal connection because the hernia "was not there before and it was there afterwards."

This unchallenged testimony from an admittedly reputable doctor apparently carried great weight with the trial justice who perhaps expressed himself with greater emphasis than was necessary when he said in his decision from the bench that there was "absolute testimony" that the hernia was a result of the accident. In our judgment what the trial justice meant by the quoted language, which the defendant construes as a misconception of the evidence, is that Dr. Garside's testimony attributing the recurrence of the hernia to the accident was absolutely uncontradicted and that it supported the conclusion of proximate cause. The exception under consideration is overruled.

We will now consider plaintiff's only exception, the first contention thereunder being that the trial justice erred in refusing to make an award for the damage to plaintiff's

1936 sedan as testified to by a repairman. It appears that the automobile had been left exposed to the weather and unrepaired from the date of the accident to the time of the trial, a period of some fifteen months. In a proper case and upon adequate proof, cost of repair may be sufficient to support an award of damages, but it is otherwise when, as in the instant case, the automobile is treated by its owner practically as a total loss. In such a case the true measure of damages to an automobile involved in an accident is the difference between its fair market value just before the accident and its fair market value immediately thereafter. *Urquhart* v. *Marty*, 61 R. I. 102. There was no such evidence in this case.

The plaintiff, however, argued that even on such a record he was entitled at least to nominal damages. In so arguing he overlooks the fact that after a review of the evidence on the point in question and correctly stating the law applicable thereto the trial justice plainly stated that he could not properly give "more than nominal damage because of the state of the proof." It is clear to us that such damages were included by him in his final award.

Plaintiff's second contention under his exception is that it was error not to award him damages for loss of wages. The evidence is clear that at the time of the accident he was unemployed. There was, however, some evidence of an indefinite character tending to show that he had been offered possible employment in a different occupation at some undetermined time. Relying on that evidence he argues that the trial justice should have awarded him damages for loss of wages on the basis of what he might have earned if he had been so employed. In our judgment such a contention is pure speculation. A plaintiff should be compensated for all damages proximately resulting from the negligence of a defendant, but no damages can be awarded when the particular claim for compensation is not supported by the required proof or is speculative or

imaginary. *Andrews* v. *Penna Charcoal Co., supra.* The cases of *Dowling* v. *L. H. Shattuck, Inc.,* 91 N. H. 234, and *Federman* v. *City of Stamford,* 118 Conn. 427, upon which the plaintiff relies, need no discussion here as they are plainly inapplicable because of different factual situations from the one in the case at bar.

There is a further and even more fundamental reason why, under our practice, plaintiff was not entitled to recover for loss of wages in the circumstances of the instant case. The declaration alleges that as a result of his injuries plaintiff was unable to follow his "usual employment" for a long period of time. Thereafter defendant filed a motion for a bill of particulars wherein it asked, among other things, that the plaintiff state the nature of his usual employment, the name of his employer, the amount of his average weekly wages, and the length of time he claimed to have been unable to follow his usual employment. This motion was granted. The plaintiff then filed a bill of particulars stating that he "operated a greasing machine for Blacher Brothers, Inc."; that his average weekly wage was $56.90; and that he was unable to work as a result of the accident for thirty-five weeks. The evidence shows that in December 1948, which was prior to the accident, he had been laid off by Blacher Brothers, Inc. because of lack of work.

It is settled that the purpose of a bill of particulars is to give the defendant fair notice of the nature and extent of the claim against him to prevent surprise. *Tourgee* v. *Rose,* 19 R. I. 432; *Gorton* v. *Johnson,* 23 R. I. 138. Upon furnishing such a bill the plaintiff is bound thereby. *Lovegrove* v. *Rogers,* 70 R. I. 83. Furthermore, in the *Gorton* case, at page 141, this court said that "bills of particulars cannot be sustained by drag-net evidence. The items thereof should be clearly and distinctly proved, or else no verdict should be based thereon." This observation applies with equal force in a case tried by the court without a jury. A defendant is not required in the midst of a

trial to meet a claim entirely different from that to which a plaintiff has limited himself in a bill of particulars. *General Motors Truck Co.* v. *Shepard Co.*, 47 R. I. 88, 99. It requires no discussion to conclude that under the above well-settled rule the plaintiff in the instant case plainly failed to establish his claim of loss of wages while in the employ of Blacher Brothers, Inc. The exception is therefore overruled.

All of the exceptions of both the plaintiff and the defendant are overruled, and the case is remitted to the superior court for the entry of judgment on the decision.

*Joseph H. Coen,* for plaintiff.

*Francis V. Reynolds, Joseph V. Cavanagh,* for defendant.