ELLEN STOTLER, ADMINISTRATRIX (ESTATE OF PAUL A. STOTLER III) *v.* DEPARTMENT OF TRANSPORTATION
(AC 33932)

Bear, Espinosa and Borden, Js.*

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 28, 2012—officially released May 28, 2013

*Ronald D. Williams, Jr.,* for the appellant (defendant).

*Eric P. Smith,* with whom, on the brief, were *Michael A. Stratton* and *Joel T. Faxon,* for the appellee (plaintiff).

*Opinion*

ESPINOSA, J. The plaintiff, Ellen Stotler, adminstratrix of the estate of the decedent, Paul A. Stotler III, commenced this action against the defendant, the

department of transportation, to recover money damages under Connecticut's highway defect statute, General Statutes § 13a-144. The defendant appeals from the judgment of the trial court denying its motion to dismiss and/or for summary judgment. The defendant claims that (1) the plaintiff's action should have been dismissed on jurisdictional grounds because the allegations in the plaintiff's complaint were insufficient to state a cause of action under § 13a-144 and (2) it was entitled to judgment as a matter of law because the evidence demonstrated that the alleged highway defects were not the sole proximate cause of the decedent's injuries. We agree with the defendant's first claim and reverse the judgment of the trial court.

In her one count complaint, dated June 29, 2007, the plaintiff alleged, in relevant part, that on July 29, 2005, her decedent "was operating his motor vehicle easterly along Route 44, a public highway, in Avon, Connecticut, when a series of collisions occurred when a truck owned by American Crushing and Recycling, LLC, lost control as it traveled down Avon Mountain on Route 44 in Avon, Connecticut." The plaintiff alleged that a resulting vehicular collision caused the death of her decedent.

Further, the plaintiff alleged that "[s]aid injuries and death occurred due to the neglect and/or default of the [s]tate of Connecticut, its [d]epartment of [t]ransportation, its [c]ommissioner of [t]ransportation Stephen E. Korta II, and/or its agent, servants and employees, by means of a defective road, in one or more of the following ways:

"(a) in that they utilized a plan of design, construction and/or repair for the area of Route 44 described above, adopted by the [s]tate of Connecticut and/or its employees, which was totally inadmissible, in that it created an unsafe condition;

"(b) in that they failed to provide adequate warnings and signage on the downhill grade on Route 44 before the intersection;

"(c) in that they failed to construct a necessary runaway truck ramp;

"(d) in that they failed to prohibit trucks on this roadway in the absence of other safeguards;

"(e) in that they failed to have, or failed to have adequate, procedures for maintaining the downhill slope in a safe condition;

"(f) in that they failed to train, or properly train, personnel in inspection of, or maintenance of, the signage and grade;

"(g) in that they failed to maintain, or properly maintain, the roadway for traffic upon it;

"(h) in that they failed to inspect, or properly inspect, the roadway so that it could be maintained or properly maintained;

"(i) in that they failed to train, or properly train, personnel to inspect the roadway so that it could be maintained or properly maintained;

"(j) in that they failed to have, or failed to have adequate, procedures for inspecting and maintaining the roadway so as to be safe for vehicular traffic;

"(k) in that they failed to have procedures in place so adequate notice could be given to correct unsafe conditions on the roadway or so that the roadway could be closed;

"(l) in that they failed to follow procedures which were intended to give adequate notice so that unsafe conditions on the roadway could be corrected, or the roadway closed;

"(m) in that they failed to provide adequate advance warning of said dangerous area to oncoming motorists so that they could avoid foreseeable out of control vehicles coming down the mountain;

"(n) in that they failed to close the road until conditions could be made safe for travel;

"(o) in that they failed to follow practices and procedures set forth in the state's [p]olicy [m]anual;

"(p) in that they failed to properly supervise state agents, servants or employees who were responsible for maintaining the roadway in a safe condition, and/or

"(q) in that they failed to install visible street signage causing the truck to proceed down the mountain missing the turnoff." For the injuries sustained by the decedent, the plaintiff sought money damages.[1]

Thereafter, the defendant filed a motion to dismiss and/or for summary judgment. The defendant argued that the plaintiff's complaint should be dismissed on jurisdictional grounds arising from its sovereign immunity because the complaint merely alleged common-law negligence, not the existence of a defect that fell within the scope of § 13a-144. Specifically, the defendant argued that the plaintiff had alleged negligent conduct by the defendant that gave rise to a highway defect, but that the specific allegations in the complaint concerning the absence of certain safety measures as well

---

[1] The trial court granted the defendant's Practice Book § 9-5 motion to consolidate this action with *Cummings* v. *Dept. of Transportation,* Superior Court, judicial district of Hartford, Docket No. CV-07-5011774-S (September 29, 2011), another defective highway action arising out of the events at issue in the plaintiff's complaint. The court's memorandum of decision disposed of the defendant's motions to dismiss and/or for summary judgment in both cases. The defendant has appealed in both the present case and in *Cummings.* See *Cummings* v. *Dept. of Transportation,* 142 Conn. App. 843, 68 A.3d 123 (2013). Subsequently, this court consolidated the related appeals for oral argument only.

as the deficient conduct of the defendant concerning the roadway did not relate to defects actionable under § 13a-144. Also, the defendant argued that it was entitled to judgment in its favor because the plaintiff failed to demonstrate that a genuine issue of material fact existed that the claimed highway defects were the sole proximate cause of the decedent's injuries. The defendant argued that the plaintiff alleged that the collision between the American Crushing and Recycling, LLC, truck and the decedent caused his death. In addition, the defendant argued that the evidence was beyond dispute that negligent actions and omissions of the truck's owner, David Wilcox, led to the catastrophic brake failure that caused the collision. The defendant argued that the evidence "undeniably" demonstrated that such negligent conduct was a substantial factor in causing the decedent's death. The defendant attached documentary proof to its motion, pertaining to the issue of sole proximate cause. The plaintiff filed a written memorandum in opposition to the defendant's motion. Likewise, the plaintiff attached documentary proof to her objection. The defendant filed a written reply to the plaintiff's objection along with additional submissions of documentary proof.

Following a hearing related to the defendant's motion, the court issued a thorough memorandum of decision in which it denied the motion to dismiss and motion for summary judgment. In denying the motion to dismiss, the court interpreted the complaint to allege that the plan of design of the portion of Route 44 at issue, specifically its steep downhill grade, was an intrinsic design defect which, for trucks, created an unacceptable risk of brake failure. The court concluded that such an allegation concerning the steep downhill grade brought the plaintiff's action within the scope of § 13a-144. Accordingly, the court rejected the defendant's claim that, because the state was immune from

suit beyond the parameters of § 13a-144, the action was not properly before the court. In denying the motion for summary judgment, the court reasoned that genuine issues of material fact existed as to whether the allegedly defective condition of the highway was the sole proximate cause of the injuries at issue. This appeal followed.

I

First, the defendant argues that the plaintiff's action should have been dismissed on jurisdictional grounds because the allegations in the plaintiff's complaint were insufficient to state a cause of action under § 13a-144. We agree.[2]

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided on that alone." (Internal quotation marks

---

[2] Although the denial of a motion to dismiss ordinarily is not an appealable final judgment, we review the defendant's claim because the motion was based on a colorable claim of sovereign immunity. See *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (denial of motion to dismiss filed on basis of colorable claim of sovereign immunity is immediately appealable final judgment), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education,* 303 Conn. 402, 413, 35 A.3d 188 (2012).

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo review. . . . In so doing, we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law. . . . Not only have we recognized the state's immunity as an entity, but [w]e have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . Exceptions to this doctrine are few and narrowly construed under our jurisprudence. . . .

"[A] litigant that seeks to overcome the presumption of sovereign immunity must show that (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute. . . . In making this determination, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Law,* 284 Conn. 701, 711–12, 937 A.2d 675 (2007); see also *Read* v. *Plymouth,* 110 Conn. App. 657, 663, 955 A.2d 1255 (General Statutes § 13a-149 to be strictly construed), cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).

"[It is] well established . . . that a defective highway action is an exception to the state's common-law sovereign immunity from suit. . . . [A] defective highway action is, in effect, one against the state as a sovereign. . . . It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued. . . . The legislature waived the state's sovereign immunity from suit in certain prescribed instances by the enactment of § 13a-144." (Internal quotation marks omitted.) *Salgado* v. *Commissioner of Transportation*, 106 Conn. App. 562, 566, 942 A.2d 546 (2008); see also *Hicks* v. *State*, 297 Conn. 798, 804, 1 A.3d 39 (2010); *White* v. *Burns*, 213 Conn. 307, 312–13, 567 A.2d 1195 (1990). "Whether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law . . . ." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 201, 592 A.2d 912 (1991). "Whether a condition in a highway constitutes a defect must be determined in each case on its own particular circumstances." *Chazen* v. *New Britain*, 148 Conn. 349, 353, 170 A.2d 891 (1961).

As set forth previously in this opinion, the plaintiff alleged several ways in which the defendant's neglect led to the decedent's death. The court, in denying the motion to dismiss, looked favorably on what it deemed to be an allegation that the steep downhill grade of Route 44 was a defective design from the time of the construction of the roadway. The plaintiff maintains that none of its allegations should be viewed in isolation, but that they all give rise to a valid claim under § 13a-144. The defendant argues the allegations, viewed independently or as a whole, do not relate to the existence of a highway defect.

We begin our analysis of the issue presented with a review of the relevant law. Section 13a-144 provides in

relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . or, in the case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . ."

Our Supreme Court has had occasion to define the parameters of the right of action afforded by § 13a-144. "To prove a breach of statutory duty under this state's defective highway statutes, the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the [commissioner] actually knew of the particular defect or that, in the exercise of [his] supervision of highways in the city, [he] should have known of that defect; (3) that the [commissioner], having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence. . . .

"We have held that a highway defect is [a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . . In *Hewison* [v. *New Haven*, 34 Conn. 136, 143 (1867)], we distinguished such highway defects from those objects which have no necessary [connection] with the road bed, or the public travel thereon, and which may expose a person to danger, not as a traveler, but independent of the highway . . . . We

explored this distinction more recently in *Comba* v. *Ridgefield*, [177 Conn. 268, 413 A.2d 859 (1979)]. In that case, [we] reject[ed] the . . . assertion that an overhanging tree limb, which subsequently fell on a traveling automobile, could be a highway defect, [explaining]: [I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair. . . . We consistently have held, moreover, that [t]he state is not an insurer of the safety of travelers on the highways which it has a duty to repair. Thus, it is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether or not the state has exercised reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler. . . .

"Because the state is not an insurer of the safety of travelers on the highways, the statutory obligation under § 13a-144 to keep the highway safe from defects is a reactive obligation, not an anticipatory obligation. That is, the [commissioner's] obligation under § 13a-144 is to remedy a highway defect once he: (1) has actual notice of a specific defect; or (2) is deemed to have constructive notice of a specific defect. As we have noted previously, his obligation does not sound in general negligence. . . . Thus, the [commissioner's] statutory obligation is to act reasonably in remedying a defect of which he has actual or constructive notice. [In the absence of] such actual or constructive notice, his obligation does not extend to inspecting streets in order to prevent dangerous conditions, even when it is reasonably likely that such conditions may occur. . . . Thus, conditions that are likely to produce a defect and the defect itself are distinguishable, and . . . liability attaches under the highway defect statute only if [the

commissioner] has notice of the defect itself. . . . Similarly, the predictability of a future defect is insufficient to prove that [the commissioner] had notice of a defect. . . .

"Finally, with respect to [a claim arising from a defective highway design], it is well established that a public authority acts in a quasi-judicial or legislative capacity in adopting a plan for the improvement or repair of its streets or highways and ordinarily will not be liable for consequential damages for injuries due to errors or defects in the plan adopted. . . . Thus, as we stated in *Hoyt* v. *Danbury*, 69 Conn. 341, 37 A. 1051 (1897), [a] defect in the plan upon which [a] highway [is] constructed . . . [does] not [come] within the [highway defect] statute. If such a defect naturally results in a direct injury to an owner of adjacent land, he has his action at common law for this invasion of his proprietary right. . . . But injuries which it may occasion to travelers cannot be made the subject of any action in their favor. They are the result of an error of judgment on the part of the officers of a public corporation, on which has been cast the burden of discharging a governmental duty of a quasi-judicial character. For consequential damage thus occasioned to members of the general public, the common law never gave a remedy; nor has the statute changed the rule. . . . Id., 351–52.

"Recognizing that an unduly rigid application of this rule could work an injustice in certain circumstances, however, the court in *Hoyt* also stated, in dictum, that, [i]f . . . a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might [support] an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was totally inadmissible . . . the highway would have been in such a defective condition

as to have been out of repair from the beginning. Id., 352; see also *Donnelly* v. *Ives*, [159 Conn. 163, 168, 268 A.2d 406 (1970)] (recognizing so-called *Hoyt* exception to general rule of nonliability for error of judgment in plan of design when plan renders highway defective from beginning). Thus, notwithstanding the general rule that the state is not liable for damages sustained by a traveler due to a defect in a highway's design, the state nevertheless may be liable if such a defect gave rise to a hazard that otherwise would be actionable under § 13a-144." (Citations omitted; internal quotation marks omitted.) *McIntosh* v. *Sullivan*, 274 Conn. 262, 268–71, 875 A.2d 459 (2005).

The court in *McIntosh* further clarified the state of the law with regard to design defect claims raised under the highway defect statute: "[A] design defect claim can be distinguished from a traditional highway defect claim only insofar as the former includes an allegation that the dangerous condition inhered in the highway's plan of design, that is, the defect was not created by some other external condition, such as a particular occurrence, like a storm, or normal wear and tear. In all other respects, however, a design defect claim is indistinguishable from any other highway defect claim and, accordingly, it is subject to all the same statutory requirements, including the requirement that the alleged defect actually be in the roadbed or so near to it as to necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . . In other words, *Hoyt* merely precludes the state from raising sovereign immunity as a defense when the plan of design, as implemented, creates the very type of hazardous condition for which the highway defect statute abrogated governmental immunity in the first place and for which the government otherwise would be liable had the dangerous condition originated through means

other than the plan of design." (Citation omitted; internal quotation marks omitted.) Id., 282.

Having reviewed relevant legal principles related to highway defect claims and, in particular, those brought pursuant to a theory of design defect, we must properly interpret the allegations set forth in the plaintiff's complaint. "The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [W]e have long eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleadings with reference to the general theory upon which it proceeded, and to substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012). As set forth previously in this opinion, we are mindful that in determining whether the action should be dismissed, we consider the allegations set forth in the complaint as well as those facts necessarily implied from them, construing them in favor of the pleader. *Electrical Contractors, Inc.* v. *Dept. of Education*, supra, 303 Conn. 413.

With regard to the roadway at issue, the plaintiff explicitly alleged, in broad terms, that the defendant "utilized a plan of design, construction and/or repair

. . . which was totally inadmissible . . . ." The plaintiff went on to allege that there was a lack of appropriate signage and a lack of a runaway truck ramp. As she did before the trial court, the plaintiff argues that the lack of a brake check area off of the roadway, in which drivers of heavy vehicles could check the status of their equipment prior to descending the slope of the roadway, is part of her allegation concerning the lack of adequate safeguards. The plaintiff made numerous allegations concerning the defendant's failure to prohibit truck traffic, to close the roadway, to warn motorists of dangers, to have and implement appropriate procedures concerning the roadway, to properly inspect the roadway, to maintain the downhill slope of the roadway in a safe condition, to train and supervise those responsible for maintaining the roadway and to follow relevant practices and procedures.

The defendant argues that the trial court fundamentally misinterpreted the pleadings when it determined that the plaintiff's complaint alleged that the plan of design, specifically, the steep downhill grade of Route 44, in and of itself, was defective. The plaintiff, for her part, urges us to interpret the complaint in a "holistic context." The plaintiff argues that the lack of safety measures expressly set forth in her complaint must be considered *in the context of the steep grade of Route 44*. As she states in her main appellate brief: "Alleged defects such as the absence of a runaway truck ramp, a brake check area, and adequate signage are only defective *because* of the topography of Route 44. If Route 44 was flat, or had substantially less severe gradient, things like a runaway truck ramp would be entirely unnecessary." (Emphasis in original.) The record does not reflect that the plaintiff asserted as a factual matter before the trial court that the downhill grade of the roadway, in and of itself, was a design defect. Furthermore, during oral argument before this court, the plaintiff's attorney represented that the complaint alleged

that the steep downhill grade of the roadway *in combination with* the lack of safety measures, specifically, the lack of a runaway truck ramp, a brake check area and adequate signage, constituted a design defect.

We disagree with the trial court's interpretation of the complaint. Neither the express language of the complaint nor the facts necessarily implied from the allegations therein set forth an allegation that the roadway was defective solely because of its steep downhill grade. Viewing the complaint in the manner most favorable to the plaintiff, and in a manner that is entirely consistent with the plaintiff's own interpretation of her complaint, we conclude that it alleged that Route 44 suffered from defects in its design in that, because of its steep grade *and* lack of adequate safety measures, it was not reasonably safe for public travel.

Viewing the allegations of the complaint as a whole and in the light most favorable to the plaintiff, the allegations do not allege the existence of the type of design defect that is actionable under § 13a-144. Here, the alleged defects necessarily include the lack of tangible safety measures such as a runaway truck ramp, a brake check area and additional signage. These measures are extrinsic to the roadway, and the claim is based on the fact that such measures did not exist at the time of the tragic events at issue. Yet, to be actionable under the statute, an alleged design defect must "actually be in the roadbed or so near to it as to necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 282. The absence of these safety measures does not fall in that category as they cannot be said to have actually obstructed or hindered travel. Nor can we reasonably conclude that the alleged deficient conduct of the defendant concerning training, inspection, maintenance and adherence to proper procedures constituted a defective

condition in or near the roadway, let alone one that obstructed travel.

The plaintiff's claim is similar in several respects to the claim raised by the plaintiff in *McIntosh*, alleging a design defect by virtue of a lack of barriers and other safety measures near a roadway to protect persons traveling on the roadway from falling rocks. Id., 264–65. Our Supreme Court held that the claim did not fall under § 13a-144 because it (1) did not involve a condition in or near the roadway that obstructs travel, (2) related to an anticipatory obligation to prevent a dangerous condition and (3) did not constitute an actionable plan of design claim insofar as it did not allege the existence of an actual obstruction in or near the subject roadway. Id., 272. The plaintiff's claim here relates to an alleged defect in the plan pursuant to which the highway was constructed, rather than a claim that a defect in such plan or design resulted in an otherwise actionable hazard, namely, one that was in or near the roadway and which actually obstructed travel. This type of claim is expressly precluded by virtue of *Hoyt* and its progeny.

For the foregoing reasons, we conclude that the plaintiff's complaint did not state a claim within the ambit of § 13a-144. Accordingly, the plaintiff's claim is barred by the doctrine of sovereign immunity and, on jurisdictional grounds, should have been dismissed by the trial court.

II

The second issue raised by the defendant is that the court improperly denied its motion for summary judgment. The defendant claims that it was entitled to judgment as a matter of law because the evidence demonstrated that the alleged highway defects were not the sole proximate cause of the decedent's injuries.

We concluded in part I of this opinion that the court lacked subject matter jurisdiction over the plaintiff's

cause of action. For this reason, we need not, and do not, reach the merits of the defendant's claim that it was entitled to judgment as a matter of law.[3]

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to dismiss and to render judgment dismissing the plaintiff's complaint.

In this opinion the other judges concurred.

---

[3] The plaintiff argues that this portion of the appeal should be dismissed on jurisdictional grounds because it is an appeal from the denial of a motion for summary judgment, which is not *ordinarily* an appealable final judgment, and the claim merely concerns the plaintiff's ability to demonstrate proximate cause. See, e.g., *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991) (denial of summary judgment motion ordinarily is not immediately appealable). Because we need not reach the merits of the defendant's second claim, we likewise need not resolve this issue.

