## Marie S. Federman *vs.* City of Stamford.

Maltbie, C. J., Haines, Hinman, Banks and Avery, Js.

Argued April 6th—decided May 2d, 1934.

*Maurice J. Buckley,* for the appellant (defendant).

*Joseph G. Shapiro,* with whom, on the brief, was *Harry Allison Goldstein* and *Charles S. Brody,* for the appellee (plaintiff).

BANKS, J.  On June 1st, 1932, the plaintiff, while driving on Summer Street in Stamford, passed over a sewer manhole in the street, the cover of which when struck by the wheels of her car became unseated, causing her to lose control of it.  The car ran into a telegraph pole, with resulting personal injuries to the plaintiff and damage to the car.  The plaintiff claimed that the cover was lower than the frame, which was set flush with the street, that it fitted so loosely in the frame that it was easily dislodged, and that it constituted a defect in the highway of which the city had actual or constructive notice.

There was evidence that, as the plaintiff drove over the manhole cover, the left front wheel of her car went down into the manhole; that the steering wheel of the car was pulled out of her hand with the result that she lost control of the car which crashed into a telegraph pole; that after the accident the manhole cover was lying in the street some distance from the manhole, and there was a mark on the warrenite where the cover had slid from the manhole over to the east side of the street.  There was also evidence that this cover was an old type of manhole cover, light in weight, which was installed about April 15th, 1932, some six weeks before the accident, to replace one that had become broken; that it was three-eighths of an inch below the level of the frame, into which it set so loosely that it would rattle when vehicles passed over it; that about two weeks before the accident it had been found unseated and several inches out of position,

and that after the accident the city authorities poured asphalt upon it to keep it from rattling and to bring the surface of the cover up to the level of the street. The jury might have reasonably concluded that the cover so installed would be likely to be displaced by automobile traffic passing over it, leaving the opening in the manhole exposed.

In placing and maintaining the cover over the catch basin the city was exercising a governmental function; but if the cover was of a type and its installation was in a manner to make the street not reasonably safe for public travel, it might constitute a defect within the meaning of the statute. General Statutes, § 1420; *Hoyt* v. *Danbury,* 69 Conn. 341, 352, 37 Atl. 1051; *Rogers* v. *Meriden,* 109 Conn. 324, 327, 146 Atl. 735. In the *Hoyt* case, in speaking of a claimed defect in the sidewalk due to the construction of steps in it, we said, by BALDWIN, C. J., "So, were the plan of construction adopted one which was totally inadmissible, as, for instance, if the sidewalk in question in the case at bar had been left with its grade broken simply by a four foot wall, without the provision of steps, or had steps provided been insecure, or unguarded by a proper railing, the highway would have been in such a defective condition as to have been out of repair from the beginning." See also *Seidel* v. *Woodbury,* 81 Conn. 65, 67, 70 Atl. 58. In *Perrotti* v. *Bennett,* 94 Conn. 533, 541, 109 Atl. 890, we held that a highway might be held to be defective where a drain had been constructed across it, below its surface, out of defective material or without sufficient covering, so that it broke while a vehicle was passing over it. In this case the jury might have reasonably concluded that the cover created, from the moment of its installation, a condition rendering the street not reasonably safe for public travel and that from that moment the street was de-

fective within the meaning of the statute. Applying the doctrine of the cases we have cited, this would be sufficient to establish liability on the part of the city if it had notice of the defect.

There was evidence that the cover had been found out of place about two weeks before the plaintiff's injury and it appeared from the city's own evidence that the city engineer and its street inspector, whose duty it was to report any defects in the street to the engineer's office, both passed over this portion of the street eight times a day. Moreover, the cover was installed by the city itself and the defective condition which produced plaintiff's injury was due to the act of its own representatives, and this in itself would be sufficient to impute to it notice of that condition. *Carstesen* v. *Stratford,* 67 Conn. 428, 434, 35 Atl. 276; *Perrotti* v. *Bennett, supra,* p. 542. The jury could not well reach any other conclusion than that the city did have notice of the defect in ample time to remedy it. The court did not err in denying the defendant's motion to set the verdict aside.

The court charged the jury upon the question of damages that it was for them to decide "how much earning capacity she [the plaintiff] lost as a result of this collision and then fix in dollars and cents a sum of money which will justly compensate her for loss of earnings," and the defendant assigns this as error on the ground that it assumes that the plaintiff had earning capacity and was entitled to compensation for the period during which she was incapacitated. The plaintiff offered evidence that she was a designer, earning a very substantial income, and at the time of her injuries was actually engaged in preparing her work for the season then about to commence. The defendant requested a correction of the finding by adding that on the day of the accident the plaintiff was not em-

ployed, her last employment having ended in November, 1931, but that she planned to go into business in the very near future. That plaintiff was not employed, otherwise than as indicated on the day of the accident, and had not been otherwise employed for some time, would not affect her right to recover for loss of earning capacity, which is not necessarily measured by wages lost. *Hayes* v. *Morris & Co.*, 98 Conn. 603, 606, 119 Atl. 910; *Missouri, K. & T. Ry. Co.* v. *Flood*, 35 Tex. Civ. App. 197. The defendant offered no evidence upon the question of the plaintiff's earning capacity, and even with the finding corrected as requested, the court was justified in submitting to the jury the question of the amount which the plaintiff was entitled to recover by reason of a loss of earning capacity as a result of the accident.

There is no error.

In this opinion the other judges concurred.