ANDREW J. RUSCH, ADMR.
*vs.*
WILLIAM J. COX, HIGHWAY COMMISSIONER

Superior Court        New London County        File No. 13091

MEMORANDUM FILED APRIL 7, 1942.

*George C. Morgan,* of New London, for the Plaintiff.

*Robert Halloran,* of Hartford, for the Defendant.

O'SULLIVAN, J. The Boston Post Road, a trunk line highway, runs generally east and west through the Town of Waterford and, at one point, crosses a culvert that accommodates a small stream known as Nevins Brook.

On October 8, 1938, the highway consisted of two ten-foot panels of concrete with tarred shoulders on either side. From about 300 feet west of the culvert, the road descends towards the brook. Substantially at the beginning of the downgrade, a fence had been erected by the State Highway Department which ran parallel with and eight feet four inches distant from the southerly edge of the concrete, the shoulder extending right up to the fence. This condition prevailed for 170 feet at which point the fence ended to provide a gap through which access might be had through a meadow, but over no defined way or lane, to a cemetery some distance beyond. The fence again began after creating this gap, about 45 feet in width. However, it had not been set in a continuation of the line of the other fence but ran from the first post to another, a matter of nine feet, at an angle towards the concrete and then again bent to follow a line four feet from the edge of the concrete. This construction reduced the southerly shoulder from eight and four inches to four feet. No warning signs had been erected to advise the traveler of this narrowing of the shoulder or of the staggered lines along which the fences had been built.

The effect of this layout was, that for one driving easterly, there was a fence on his right over eight feet from the concrete as he passed beyond the top of the knoll which remained at that distance until he reached a point about 100 feet from the brook when it was narrowed to four feet.

This sudden, sharp and substantial change in the relative positions of the two fences was such as to create, under certain foreseeable circumstances, an extremely dangerous condition for those having occasion to make use of the shoulder during the night season. In other words, the condition created a defective highway.

On October 8, 1938, Frederick Rusch had accepted an invitation to be driven to New York in a Ford convertible coupe, operated by one Wilson, aged 21. Two other boys completed the party, one being a brother of Frederick. The boys had left New London during the evening and had reached New York after midnight. There, they parked the car and then slept in it. In the morning, they went sight-seeing, visiting such places as the Aquarium and the docks. About noon they attended a theatre and at 4:30 returned to their car and set out for New London.

Two of the boys occupied the rumble seat, while Frederick sat in front with Wilson, the driver. About 9 p.m. they were approaching the vicinity of Nevins Brook and traveling between 30 and 35 miles per hour, a speed which had been consistently maintained for a long time. It had now become dark and the car's headlights were on.

As the coupe reached the grade west of the brook, traffic was approaching from the east. Included in this on-coming traffic was a very large truck or bus on its own right hand side of the concrete. Using extra caution to avoid the possibility of a collision, Wilson pulled over on the southerly shoulder so that his right hand wheels were about four feet off the concrete and an equal distance from the white post fence further to his right. Just as he was in the act of passing the truck, he reached the place where the line of the fence he had been following was shifted over four feet closer to the concrete. He had never before driven over this highway save on the day previous while going in the opposite direction. He was not blinded by any headlights but did not see the fence on the new line until too late to avoid it and the right front fender of his car hit the first post near the concrete. A board flew off, went through the windshield and struck Frederick, resulting in his death.

No negligence of Wilson's entered into the accident. The sole cause of Frederick's death was the defective and dangerous condition of the highway.

The right of the plaintiff, the administrator on Frederick's estate, to pursue this action is granted by section 1481 of the General Statutes, Revision of 1930. The defendant has argued that the action must collapse because of the plaintiff's failure to comply with that provision of the statute requiring the giving of a notice to the Highway Commissioner. "No such action," runs the statute, "shall be brought....unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence shall have been given within sixty days thereafter to the highway commissioner."

The language is not greatly unlike that found in section 1420 of the General Statutes, Revision of 1930, concerning the liability of towns, save that in this latter section it is provided that no notice is necessary if suit is brought within the 60-day period. Section 1481 is devoid of any similar

provision. Nonetheless as long as notice of the injury (and it will be observed that it need not be in writing), its cause, and the time and place of its occurrence is given to the Commissioner, the statute will, in this respect, be complied with.

This present action was instituted within 60 days from the date of the accident and the Commissioner was properly served with the process, has appeared and defended. The complaint, presenting as it did all the data required by section 1481, was ample to furnish the Commissioner with the necessary information, and was a sufficient notice to comply with the terms of the statute. It must not be overlooked that the requirement for giving notice is in the statute, not to place difficulties in the path of the injured party, but solely to provide essential information to one claimed to be derelict in duty, so that he may have an opportunity to investigate all accidents involving his department.

Having brought suit within the 60-day period, no other notice was required of this plaintiff in addition to that found in the complaint itself. In other words, the complaint was the notice.

The defendant makes the additional claim that the last sentence of section 1481 bars recovery. The words on which he relies are these: "The highway commissioner shall not be liable in damages for injury to person when such injury shall have occurred on any portion of a highway not an improved trunk line or state aid road but connecting with or crossing an improved trunk line or state aid road, which portion is not within the traveled portion of such trunk line or state aid road."

This portion of the statute is not applicable to the facts presented by this case. There was no highway leading from the Post Road to the meadow on the south. The gap which had been left in the fence was merely to permit a cross-cut over the meadow to the cemetery. There was no evidence from which it could be determined that a highway ran through the gap, and this was because, in reality, no such highway existed.

It is true, as the defendant suggests, that the accident did not occur on the traveled portion of the highway, for the concrete marked the extent of the traveled portion. *Kurtz vs. Morse Oil Co.*, 114 Conn. 336. However, the duty of the

Commissioner is not confined to so limited an area. The right of recovery afforded by section 1481 imposes upon him the same burden as that imposed on towns by section 1420. *Perrotti vs. Bennett,* 94 Conn. 533, 542.

An approximation to a definition of a defect in a highway is to be found in *Hewison vs. City of New Haven,* 34 Conn. 136, 142: "Any object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result, would generally constitute a defect in the highway."

To hold that a defect, for which the Commissioner should be held responsible, must exist in the traveled portion of the highway would run counter to our decisions and lead to re-sults bordering on the ridiculous. For example, if one foot south of the traveled portion of the Post Road, a five foot pit had been dug by the Commissioner into which an automobile fell during the night season, could anyone seriously maintain that the highway at that point was not defective?

If in the use of the traveled portion of the highway and, as incidental thereto, the use of the shoulders for the purposes for which they are there, a condition exists which makes travel not reasonably safe for the public, the highway is defective. The test as to liability is whether or not the Commissioner has exercised reasonable care to keep the highway—which includes the shoulders—in a reasonably safe condition. *Bacon vs. Town of Rocky Hill,* 126 Conn. 402, 404.

In view of the manner in which the fences were constructed, I can reach no other conclusion than that the highway was not reasonably safe, a situation of which the defendant was well aware. Indeed, the layout was such as almost to amount to a trap for those, who in the night season, might drive upon the shoulder for emergency use or in the exercise of unusual caution, due to the exigency of modern traffic.

Another claim of the defendant deserves consideration. It appears that during August, 1938, the Highway Department began the reconstruction of certain of its fences along the Post Road in the Town of Waterford. The work continued until the hurricane on September 21st when it was suspended and not resumed until December 1st. On the evening of the accident, however, the signs which had been erected during

August were still in place, one being located on the southerly side of the highway a mile and three-tenths west of Nevins Brook. This was the only one which Wilson passed as he drove along. The printing on the sign was as follows: "Caution (eight inch letters) Guide Rail Under Repair (six inch letters) Sec. 1513 Public Acts 1930 Per Order of State Highway Com. (one and three-quarter inch letters)."

Under section 1513 of the General Statutes, Revision of 1930, the Highway Commissioner "may close or restrict traffic over any section of any trunk line. . . .highway. . . .for the purpose of construction, reconstruction or repair by posting notices at each end of such section of highway. . . .and any person using such highway when such notices are so posted shall do so at their own risk."

There are two reasons, it seems to me, why the defendant's position on his now-discussed claim cannot be upheld. In the first place, the sign did not, in conformity with the statute, "close or restrict traffic" over this part of the Post Road. In this respect, a difference is to be found with those instances where the Commissioner has notified the traveling public that the "road is legally closed under section 1513" and that "travel is at your own risk." *Belhumuer vs. Bristol,* 121 Conn. 475; *McManus vs. Jarvis,* 128 id. 343. The most that was done here was to advise the use of caution on the part of automobile drivers, which is far different from a notification that the highway was closed or restricted in use.

The second reason for overruling the defendant's claim lies in the fact that he has failed to raise his contention by an appropriate pleading. As the trial progressed and had reached its final day for hearing, counsel for the defendant learned for the first time of the existence of the sign in question. Counsel for the plaintiff knew nothing of it until evidence was offered upon the subject. In the absence, however, of a properly pleaded special defense, such evidence is of no avail, even if it be assumed that the sign was ample to "close or restrict" traffic. Assumption of risk must be pleaded. (Practice Book [1934] §104.)

The final claim made by the defendant is that the allegation "that the defendant, William J. Cox, was and still is highway commissioner of the State of Connecticut has not been proved." In addition thereto, it is urged that judicial notice should be

taken of the fact that he was suspended by the Governor on February 4, 1942. The short answer to this claim is that by his answer, counsel has admitted that the defendant is the Highway Commissioner.

Therefore, under the circumstances, judgment must enter for the plaintiff, and the very difficult problem presents itself as to the assessment of damages. Frederick was 17 when he died. He was a boy of real promise with a fine character and characteristics. He had been interested in Boy Scout activities and he had won the highest awards that organization can bestow. He weighed about 160, and had always enjoyed very good health. He was a senior in high school. He had helped his father build their home and in the practical arts he was very proficient. During the summer seasons he had been accustomed to work and had saved some of his wages by placing it in a small savings account from which he drew from time to time to buy his own clothes. He had a life expectancy of over 40 years.

I entertain no doubt that the award must be substantial to meet the rule applicable to death cases. I am thoroughly satisfied that Frederick was an unusual boy with rare qualities. Under all of the circumstances, the sum of $10,000 seems to me to be fitting and proper. Let judgment, then, enter for that amount.