******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELLEN STOTLER, ADMINISTRATRIX (ESTATE OF
PAUL A. STOTLER III) *v.* DEPARTMENT OF
TRANSPORTATION
(SC 19177)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Robinson and Vertefeuille, Js.

*Argued April 30—officially released August 19, 2014*

*Joel T. Faxon*, with whom, on the brief, was *Eric P. Smith*, for the appellant (plaintiff).

*Ronald D. Williams*, *Jr.*, for the appellee (defendant).

*Opinion*

ROGERS, C. J. The dispositive issue in this certified appeal is whether a defective highway claim based on the design of Route 44 across Avon Mountain falls within the purview of General Statutes § 13a-144,[1] pursuant to which the state has consented to liability for certain injuries caused by a defective highway. The plaintiff, Ellen Stotler, administratrix of the estate of the decedent, Paul A. Stotler III, brought this action pursuant to § 13a-144 against the defendant, the Department of Transportation, to recover damages sustained when a truck descending Avon Mountain along Route 44 experienced brake failure and collided with multiple vehicles.[2] The defendant filed a motion to dismiss the action on the ground that the complaint failed to state a claim under § 13a-144 and, therefore, was barred by sovereign immunity. The trial court denied the defendant's motion to dismiss, and the defendant appealed from that decision to the Appellate Court.[3] The Appellate Court determined that the plaintiff's complaint failed to state a cause of action under § 13a-144, and, accordingly, reversed the judgment of the trial court and remanded the case with direction to render judgment dismissing the plaintiff's complaint. *Stotler* v. *Dept. of Transportation*, 142 Conn. App. 826, 843, 70 A.3d 114 (2013). We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff's action should have been dismissed for lack of subject matter jurisdiction because the allegations in the plaintiff's complaint failed to state a cause of action under . . . § 13a-144?" *Stotler* v. *Dept. of Transportation*, 309 Conn. 921, 76 A.3d 624 (2013). We answer this question in the affirmative and, accordingly, affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiff brought this defective highway action against the defendant alleging that, on July 29, 2005, the decedent "was operating his motor vehicle easterly along [Route] 44, a public highway in Avon . . . when a series of collisions occurred when a truck owned by American Crushing and Recycling, LLC, lost control as it traveled down Avon Mountain on Route 44 . . . result[ing] in the death of [the decedent]."

The plaintiff alleged that the decedent's injuries and death resulted from the neglect or default of the defendant, "by means of a defective road, in one or more of the following ways:

"(a) in that [the defendant] utilized a plan of design, construction and/or repair for the area of Route 44 described above, adopted by the state of Connecticut and/or its employees, which was totally inadmissible,[4] in that it created an unsafe condition;

"(b) in that [the defendant] failed to provide adequate warnings and signage on the downhill grade on Route 44 before the intersection;

"(c) in that [the defendant] failed to construct a necessary runaway truck ramp;

"(d) in that [the defendant] failed to prohibit trucks on this roadway in the absence of other safeguards;

"(e) in that [the defendant] failed to have, or failed to have adequate, procedures for maintaining the downhill slope in a safe condition;

"(f) in that [the defendant] failed to train, or properly train, personnel in inspection of, or maintenance of, the signage and grade;

"(g) in that [the defendant] failed to maintain, or properly maintain, the roadway for traffic upon it;

"(h) in that [the defendant] failed to inspect, or properly inspect, the roadway so that it could be maintained or properly maintained;

"(i) in that [the defendant] failed to train, or properly train, personnel to inspect the roadway so that it could be maintained or properly maintained;

"(j) in that [the defendant] failed to have, or failed to have adequate, procedures for inspecting and maintaining the roadway so as to be safe for vehicular traffic;

"(k) in that [the defendant] failed to have procedures in place so adequate notice could be given to correct unsafe conditions on the roadway or so that the roadway could be closed;

"(l) in that [the defendant] failed to follow procedures which were intended to give adequate notice so that unsafe conditions on the roadway could be corrected, or the roadway closed;

"(m) in that [the defendant] failed to provide adequate advance warning of said dangerous area to oncoming motorists so that they could avoid foreseeable out of control vehicles coming down the [Avon] [M]ountain;

"(n) in that [the defendant] failed to close the road until conditions could be made safe for travel;

"(o) in that [the defendant] failed to follow practices and procedures set forth in the state's Policy Manual;

"(p) in that [the defendant] failed to properly supervise state agents, servants or employees who were responsible for maintaining the roadway in a safe condition, and/or

"(q) in that [the defendant] failed to install visible street signage causing the truck to proceed down [Avon] [M]ountain missing the turn off." (Footnote added.)

The defendant filed a motion to dismiss the action on the ground that the plaintiff's allegations were insuf-

ficient, as a matter of law, to state a claim under § 13a-144.[5] Specifically, the defendant claimed that the allegations did not fall within the limited exception to the general rule barring design defect claims under the defective highway statute. After a hearing, the trial court, *Sheldon, J.*, denied the defendant's motion to dismiss.[6] The trial court reasoned that "the plan of design providing for the steep downhill grade of Route 44, which has always been open to truck traffic, is alleged and may be proved by the [plaintiff] to have been defective from the outset because its incorporation into the roadway created a condition, intrinsic to the roadway, that constituted a nuisance, when the roadway was used as intended by trucks, from which injury [was] ultimately necessarily the inevitable or probable result." (Internal quotation marks omitted.)

The defendant appealed from the trial court's decision to the Appellate Court.[7] The Appellate Court concluded that the plaintiff failed to allege an actionable highway defect under § 13a-144 and, therefore, that her claim was barred by sovereign immunity. *Stotler* v. *Dept. of Transportation*, supra, 142 Conn. App. 841. The Appellate Court reasoned that the trial court misconstrued the plaintiff's complaint as alleging that the steep downhill grade of the road *alone* is an actionable highway design defect.[8] Id., 840–41. Instead, the Appellate Court construed the complaint to allege that the design of Route 44 providing for the steep downhill grade *in combination with* the lack of tangible safety measures rendered the road defective. Id., 841. The Appellate Court determined that the absence of safety measures is not an actionable highway defect, and, therefore, the plaintiff failed to state a claim under § 13a-144. Id. Accordingly, the Appellate Court reversed the judgment of the trial court. Id., 843. This certified appeal followed.[9]

We begin with the governing legal principles and standard of review. "[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . Nevertheless, a plaintiff may surmount this bar against suit if, inter alia, he can demonstrate that the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity. . . . Even when there is an express statutory waiver of immunity, however, the plaintiff's complaint must allege a claim falling within the scope of that waiver. . . .

"Lack of a statutory waiver of immunity is a jurisdictional defect properly raised by a motion to dismiss. . . . A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will

be de novo. . . .

"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Conboy* v. *State*, 292 Conn. 642, 649–51, 974 A.2d 669 (2009).

"The state highway liability statute is a legislative exception to the common law doctrine of sovereign immunity and is to be strictly construed in favor of the state. While negligence was a common law tort, there was no liability of the sovereign at common law for a defective highway in negligence or on any other common law theory. . . . The state highway liability statute imposes the duty to keep the state highways in repair upon the highway commissioner; that is the statutory command. Therefore, because there was no right of action against the sovereign at common law, a plaintiff, in order to recover, must bring himself within § 13a-144." (Citations omitted.) *White* v. *Burns*, 213 Conn. 307, 321, 567 A.2d 1195 (1990).

In order for a plaintiff to recover under § 13a-144, "the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the [Commissioner of Transportation] actually knew of the particular defect or that, in the exercise of [his] supervision of highways . . . [he] should have known of that defect; (3) that the [Commissioner of Transportation], having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, 274 Conn. 262, 268, 875 A.2d 459 (2005). "Whether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law . . . ." (Internal quotation marks omitted.) *Ferreira* v. *Pringle*, 255 Conn. 330, 341–42, 766 A.2d 400 (2001).

We have defined a highway defect as "any object or condition in, upon, or near the traveled path which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result." *Hickey* v. *Newtown*, 150 Conn. 514, 518–19, 192 A.2d 199 (1963); accord *McIntosh* v. *Sullivan*, supra, 274 Conn. 268–69 ("[w]e have held that a highway defect

is [a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result" [internal quotation marks omitted]). "[I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair." *Comba* v. *Ridgefield*, 177 Conn. 268, 271, 413 A.2d 859 (1979); see id., 269, 271 (overhanging tree limb that fell on automobile was not highway defect because it "did not obstruct, hinder or operate as a menace to travel").

Moreover, "[w]e have consistently held that [t]he state is not an insurer of the safety of travelers on the highways which it has a duty to repair. Thus, it is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether or not the state has exercised reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler." (Internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 462–63, 569 A.2d 10 (1990); accord *Donnelly* v. *Ives*, 159 Conn. 163, 167, 268 A.2d 406 (1970) ("[t]he duty imposed on the state by the provision of the defective highway statute is not such as to make the state an insurer for people using those highways which the defendant must keep in repair but is rather a duty to exercise reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler"); *Chazen* v. *New Britain*, 148 Conn. 349, 353, 170 A.2d 891 (1961) ("a [state] is not an insurer against accidents occurring on its highways; its duty is not to make the streets absolutely safe for the users thereof but only to exercise reasonable care to keep them in a reasonably safe condition for travel").

With these governing legal principles in mind, we turn to the plaintiff's allegations in the present case. In her complaint, the plaintiff alleges that the defendant "utilized a plan of design, construction and/or repair . . . which was totally inadmissible, in that it created an unsafe condition . . . ." See footnote 4 of this opinion. Specifically, the plaintiff alleges that the absence of tangible safety measures, including a runaway truck ramp and adequate signage warning of the steep downhill grade, as well as the failure to prohibit trucks on the roadway in the absence of these and other safeguards, rendered the roadway defective.[10]

Although the plaintiff does not specifically allege that the downhill grade of the roadway constituted part of the claimed design defect, we are mindful that "[t]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the

general theory upon which it proceeded . . . ." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 536, 51 A.3d 367 (2012). Indeed, the plaintiff argues, and we agree, that her allegations concerning the absence of certain safety measures must be viewed in the context of the steep downhill grade of Route 44. As the plaintiff states in her brief, "[a]lleged defects such as the absence of a runaway truck ramp, and adequate signage are only defective *because* of the topography of Route 44. If Route 44 was flat, or had a substantially less severe gradient . . . [safety measures] like a runaway truck ramp would be entirely unnecessary." (Emphasis in original.)

We note, however, that the plaintiff has conceded both in her appellate brief and at oral argument before this court that she has not alleged that the steep downhill grade of Route 44 *alone* constitutes an actionable highway defect.[11] See footnote 8 of this opinion. Indeed, by her own account, the plaintiff alleges that the defect in the present case consists of the "dangerously steep road surface that channels descending traffic into a major crossing intersection immediately at the bottom of the slope, *together with* the absence of an escape ramp to divert and contain vehicles encountering runaway conditions, and the absence of adequate warning signs to alert drivers to the severity of the conditions they were about to encounter before they were irrevocably committed to the descent." (Emphasis added.) Put simply, the plaintiff's complaint alleges that the design of the roadway consisting of the steep downhill grade, in the absence of certain identified safety measures, rendered it unsafe for public travel and thus defective within the meaning of § 13a-144.

The question then becomes whether the complaint, so construed, states a cause of action under the defective highway statute. We begin our analysis with an overview of the parameters of the right of action afforded under § 13a-144 for damages arising from an alleged defect in a highway's design. "[I]t is well established that a public authority acts in a quasi-judicial or legislative capacity in adopting a plan for the improvement or repair of its streets or highways and ordinarily will not be liable for consequential damages for injuries due to errors or defects in the plan adopted. . . . Thus, as we stated in *Hoyt* v. *Danbury*, 69 Conn. 341, 37 A. 1051 (1897), [a] defect in the plan upon which [a] highway [is] constructed . . . [does] not [come] within the [defective highway] statute. . . . [Thus] injuries which it may occasion to travelers cannot be made the subject of any action in their favor. They are the result of an error of judgment on the part of the officers of a public corporation, on which has been cast the burden of discharging a governmental duty of a quasi-judicial character. For consequential damages thus occasioned to members of the general public, the common law never

gave a remedy; nor has the statute changed the rule. . . . Id., 351–52.[12]

"Recognizing that an unduly rigid application of this rule could work an injustice in certain circumstances, however, the court in *Hoyt* also stated, in dictum, that, [i]f . . . a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might [support] an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was totally inadmissible . . . the highway would have been in such a defective condition as to have been out of repair from the beginning. Id., 352 . . . ." (Citations omitted; footnote added; internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 270–71.

"The hypothetical design claim that the court in *Hoyt* used to illustrate what an actionable design claim might resemble reveals the true nature and limitation of the 'exception.' Specifically, the court described a sidewalk that 'had been left with its grade broken simply by a four foot wall, without the provision of steps . . . .' [*Hoyt* v. *Danbury*, supra, 69 Conn. 352]. According to the court, such a sidewalk 'would have been in such a defective condition as to have been out of repair from the beginning.' Id. Thus, the cognizable design defect claim that the court hypothesized in *Hoyt* essentially would consist of an allegation that the plan of design called for a four foot drop or hole in the road. Indeed, the court in *Hoyt* immediately went on to state that, under its hypothetical, the plaintiff's claim would be 'no stronger than if the road had been originally built in the best manner'; id.; because, logically, the highway defect statute covers four foot holes in the middle of the roadbed irrespective of how they came to be there. In other words, a design defect claim can be distinguished from a traditional highway defect claim only insofar as the former includes an allegation that the dangerous condition inhered in the highway's plan of design, that is, the defect was not created by some other external condition, such as a particular occurrence, like a storm, or normal wear and tear. *In all other respects, however, a design defect claim is indistinguishable from any other highway defect claim and, accordingly, it is subject to all the same statutory requirements, including the requirement that the alleged defect actually be in the roadbed or so near to it as to 'necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . .' Hewison* v. *New Haven*, [34 Conn. 136, 142 (1867)]. [That is], *Hoyt* merely precludes the state from raising sovereign immunity as a defense when the plan of design, as implemented, creates the very type of hazardous condition for which the highway defect statute abrogated governmental immunity in the first place and for which the govern-

ment otherwise would be liable had the dangerous condition originated through means other than the plan of design." (Emphasis added.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 281–82. Therefore, "notwithstanding the general rule that the state is not liable for damages sustained by a traveler due to a defect in a highway's design, the state nevertheless may be liable if such a defect gave rise to a hazard that otherwise would be actionable under § 13a-144." Id., 271.

Thus, the issue we must decide in the present case is whether the plaintiff's allegations, if true, would amount to an actionable highway defect claim within the narrow exception in *Hoyt* to the general rule precluding liability for design defects. The plaintiff argues that the plan pursuant to which the highway was constructed was "totally inadmissible" because the highway was "inherently dangerous when put to the use for which it was intended and for which it [was] lawfully open." Specifically, the plaintiff claims that the roadway's steep grade and layout, combined with the absence of tangible safety measures, constituted a condition intrinsic to the roadway that rendered it defective within the meaning of the highway defect statute.[13] In response, the defendant claims that the steep downhill grade, together with the lack of safety measures, does not constitute an actionable highway defect because it is not a hazardous object or condition in or near the roadbed that necessarily obstructed travel thereon. Furthermore, the defendant argues that the plaintiff's claim is materially indistinguishable from the design defect claim in *McIntosh* that this court held was not actionable under § 13a-144. We agree with the defendant. Accordingly, we conclude that the plaintiff's allegations are insufficient as a matter of law to state a claim pursuant to § 13a-144.

First, we are not persuaded by the plaintiff's attempt to distinguish her claim in the present case from the claim raised in *McIntosh* that this court held was barred by sovereign immunity. In *McIntosh*, the plaintiff, Adalbert H. McIntosh, Sr., brought a highway defect claim under § 13a-144 for injuries he sustained when rocks and debris fell from a rocky ledge "adjacent to and above [the] highway" and struck his motor vehicle. (Internal quotation marks omitted.) Id., 264. McIntosh alleged that the highway was defectively designed in that, inter alia, "the highway was located dangerously close to raised rocky cliffs . . . the [defendant, the Commissioner of Transportation] failed to erect barriers . . . to prevent falling rocks and debris from entering the highway . . . [and] there were no warning signs in the area to warn approaching motorists of the hazardous and dangerous conditions then and there existing . . . ." (Internal quotation marks omitted.) Id., 264–65. The trial court denied the Commissioner of Transportation's motion to dismiss the action for failure to state a claim under § 13a-144, and the Appellate Court affirmed

the trial court's decision. *McIntosh* v. *Sullivan*, 77 Conn. App. 641, 644–45, 825 A.2d 207 (2003).

On appeal, this court reversed the judgment of the Appellate Court. *McIntosh* v. *Sullivan*, supra, 274 Conn. 264. We concluded that "[McIntosh's] allegations [were] insufficient to establish an actionable claim under § 13a-144 because the rocks and debris located above the highway did not impede or obstruct travel thereon." Id., 285. Because McIntosh failed to allege an actionable highway defect, we held that, "[a] fortiori, [his] allegations [were] insufficient to fall within the limited exception to the general rule precluding liability for design defects." Id. Thus, the court determined that the plan of design providing for the location of the highway next to a rocky cliff, in combination with the absence of adequate warning signs and a barrier to prevent falling rocks from entering the highway, did not render the highway defective within the meaning of the defective highway statute.

Similarly, in the present case, we conclude that the plan of design providing for the steep downhill grade of the highway, in combination with the absence of adequate warning signs and tangible safety measures, did not render the highway defective within the meaning of § 13a-144. The absence of adequate warning signs and tangible safety measures is not a cognizable highway defect because it does not constitute an "object or condition in . . . the traveled path which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ."[14] *Hickey* v. *Newtown*, supra, 150 Conn. 518. Although the plaintiff claims that certain safety measures were necessary because of the steep downhill grade, and that the absence thereof rendered the road unsafe, this claim still pertains directly to the *design* of the road and not to whether that design, as implemented, created an actionable hazard in the road that necessarily obstructed travel. Indeed, this court in *McIntosh* rejected the notion that the absence of certain safety measures is an actionable defect, despite the fact that these measures may have been warranted in view of the highway's close proximity to a rocky ledge.

The plaintiff further claims that *McIntosh* is distinguishable from the present case because the steep downhill grade of Route 44, unlike the rocky ledge abutting the highway in *McIntosh*, is a condition *intrinsic* to the highway that rendered the road defective.[15] Although we acknowledge this limited distinction, we are not persuaded that it compels a different result in the present case. The steep downhill grade, albeit a natural condition inherent to the roadway by virtue of its location across Avon Mountain, is no more cognizable a defect than the rocky ledge located adjacent to the roadway in *McIntosh*. Neither are objects or conditions in or near the road "which would necessarily

obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." *Hewison* v. *New Haven*, supra, 34 Conn. 142. Moreover, the steep downhill grade is a condition that pertains solely to the *design* of the road, namely, its location across Avon Mountain. In order to be a cognizable design defect, however, the defective design must result in an actionable hazard in the road that necessarily obstructed travel. Under the reasoning in *McIntosh*, the steep downhill grade, together with the lack of adequate warning signs and tangible safety measures, is not an actionable highway defect.[16] Therefore, the plaintiff cannot, as a matter of law, state a claim under § 13a-144 within the limited exception to the general rule precluding liability for design defects.

Furthermore, the present case is distinguishable from the handful of cases in which this court has recognized a cognizable highway design defect claim. For instance, in *Perrotti* v. *Bennett*, 94 Conn. 533, 534–35, 109 A. 890 (1920), the municipality installed a drain pipe below the surface of the highway and, in accordance with the plan adopted, covered it with twelve inches of sand and gravel. The plaintiff brought a highway defect claim against the municipality after he was injured when the highway above the pipe collapsed under the weight of his vehicle. Id., 535. The trial court found that the plaintiff's injuries were "due to a defect in the original plan of construction of said drain," and rendered judgment for the municipality. Id., 535–36. On appeal, we reversed the trial court's judgment, concluding that the plaintiff's claim fell within the limited exception to the general rule barring liability for design defect claims pursuant to § 13a-144. Id., 541–42.[17]

In *Perrotti*, unlike in the present case, the plaintiff alleged an otherwise actionable highway defect, namely, the poorly constructed drain under the surface of the highway that collapsed under the weight of a vehicle traveling thereon. See id., 535. The poorly constructed drain constituted a condition "in the roadbed or so near to it as to necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 282; see *Perrotti* v. *Bennett*, supra, 94 Conn. 541 ("from the time the drain was laid it constituted a defect in the highway, whether this was due to the want of adequate covering, or to the character of the pipe, or both"). The municipality could not escape liability merely because the drain was constructed pursuant to a plan of design that the municipality adopted in its "quasi-judicial or legislative capacity"; *Donnelly* v. *Ives*, supra, 159 Conn. 168; because the plan, as implemented, created a defect "for which the government otherwise would be liable had the dangerous condition originated through means other than the plan of design." *McIntosh* v. *Sullivan*,

supra, 282; see id. (*Hoyt* exception "precludes the state from raising sovereign immunity as a defense when the plan of design, as implemented, creates the very type of hazardous condition for which the highway defect statute abrogated governmental immunity in the first place"). The municipality was therefore liable for injuries caused by the defective plan of design "after it had reasonable notice of the defect and of the imminence of the injury." *Perrotti* v. *Bennett*, supra, 541.

In the present case, by contrast, the plan of design providing for the steep downhill grade, together with the absence of tangible safety measures, as implemented, did not create an otherwise actionable highway defect as defined by our case law. As discussed previously in this opinion, a highway defect is "[a]ny object [or condition] in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 273; *Hickey* v. *Newtown*, supra, 150 Conn. 518–19. A properly constructed road on a 10 percent downhill grade, together with the absence of certain tangible safety measures, does not constitute a condition or object in the traveled path that would necessarily obstruct travel thereon. Indeed, the plaintiff does not claim that the road itself was in poor condition, either "in material or manner of construction . . . ." *Hoyt* v. *Danbury*, supra, 69 Conn. 352. Instead, the plaintiff seeks to hold the defendant liable for its decision to construct a highway across a steep downhill grade, without including certain identified safety measures. This is precisely the nature of the claim that is precluded by virtue of *Hoyt* and its progeny. See *Donnelly* v. *Ives*, supra, 159 Conn. 168 ("a public authority acts in a quasi-judicial or legislative capacity in adopting a plan for the [construction] of its streets or highways and ordinarily will not be liable for consequential damages for injuries due to error or defects in the plan adopted"); *Hoyt* v. *Danbury*, supra, 351 ("[a] defect in the plan upon which [a] highway [is] constructed . . . [does] not [come] within the [highway defect] statute").

In the absence of an actionable hazard in the road that necessarily obstructed travel thereon, the defendant's decision in the present case regarding the location of the highway across a steep downhill grade, and the extent of warning signs necessary to alert motorists thereto, is not subject to collateral review by this court. "[I]t has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review [the] determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the [s]tate or one of its subdivisions

may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public." (Internal quotation marks omitted.) *Donnelly* v. *Ives*, supra, 159 Conn. 168; see id., 165 n.2, 169 (affirming directed verdict in favor of highway commissioner with respect to highway design defect claim alleging poor highway layout and inadequate warning signs); see also *Hoyt* v. *Danbury*, supra, 69 Conn. 351 ("so long as the [sidewalk design] selected was an appropriate and lawful one [in that stairs were properly constructed and in a state of repair], [the defendant city's] decision was not subject to collateral review in a suit of this nature").[18]

Under the theory of liability the plaintiff advocates in the present case, virtually every design defect claim pertaining directly to the layout of the road would be actionable under the defective highway statute.[19] That is, if we were to decide that a highway's layout across a 10 percent downhill grade, in the absence of tangible safety measures, constitutes a "condition in, upon or near the traveled path which would necessarily obstruct or hinder . . . traveling thereon"; *Hickey* v. *Newtown*, supra, 150 Conn. 518; then conceivably *any* highway design could be described as a defective "condition" intrinsic to the highway. This result would hamstring states and municipalities in discharging their respective "duty to plan highways for the safety of the traveling public." (Internal quotation marks omitted.) *Donnelly* v. *Ives*, supra, 159 Conn. 168. We simply cannot construe the defective highway statute in a manner that would eviscerate the general rule precluding liability for design defect claims under *Hoyt* and its progeny. See *White* v. *Burns*, supra, 213 Conn. 321 ("[t]he state highway liability statute . . . is to be strictly construed in favor of the state").

For the reasons set forth herein, we conclude that the Appellate Court properly determined that the plaintiff's complaint fails to state a claim under § 13a-144. Therefore, the plaintiff's claim is barred by the doctrine of sovereign immunity and should have been dismissed by the trial court.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, ZARELLA, ROBINSON and VERTEFEUILLE, Js., concurred.

[1] General Statutes §13a-144 provides in relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . ."

[2] Prior to instituting this action, the plaintiff filed the requisite statutory notice of a claim for damages, pursuant to § 13a-144, with the Commissioner of Transportation, Stephen E. Korta II, and the state of Connecticut.

[3] Despite the general rule that interlocutory rulings are not immediately appealable, the denial of a motion to dismiss based on a colorable claim of sovereign immunity is an appealable final judgment. See, e.g., *McIntosh* v.

*Sullivan*, 274 Conn. 262, 264 n.2, 875 A.2d 459 (2005); *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 91 n.12, 861 A.2d 1160 (2004).

[4] The term "inadmissible" is apparently taken from this court's decision in *Hoyt* v. *Danbury*, 69 Conn. 341, 352, 37 A. 1051 (1897), wherein the court articulated the following exception to the general rule precluding liability for highway design defects: "If . . . a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might [support] an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was *totally inadmissible* . . . the highway would have been in such a defective condition as to have been out of repair from the beginning." (Emphasis added.) Thus, the term "inadmissible," as used throughout this opinion, denotes a plan of construction that is so inadequate that the highway is "out of repair from the beginning" and thus "require[s] repairs in order to make the highway safe for travel . . . ." Id.

[5] More specifically, the defendant filed a hybrid motion captioned "motion to dismiss and/or for summary judgment" in which it claimed that the plaintiff's complaint was barred by the doctrine of sovereign immunity and/or there is no genuine issue as to any material fact, and the defendant is entitled to judgment as a matter of law. With respect to its summary judgment claim, the defendant argued that it was entitled to judgment as a matter of law because the alleged highway defect was not the sole proximate cause of the plaintiff's injuries. See, e.g., *Ormsby* v. *Frankel*, 255 Conn. 670, 675–76, 768 A.2d 441 (2001) (plaintiff bringing claim under § 13a-144 must prove that alleged highway defect was sole proximate cause of injuries claimed). In particular, the defendant claimed that there was no genuine issue of material fact that the dump truck involved in the collision had defective brakes, and that the defective brakes were a proximate cause of the plaintiff's injuries.

The trial court, *Sheldon, J.*, denied the defendant's motion for summary judgment and the defendant appealed from that decision to the Appellate Court. The Appellate Court, however, declined to review the defendant's summary judgment claim in light of its threshold determination that the plaintiff's complaint should have been dismissed for failure to state a claim under § 13a-144. *Stotler* v. *Dept. of Transportation*, 142 Conn. App. 826, 842–43, 70 A.3d 114 (2013).

After we granted the plaintiff's petition for certification, the defendant raised as an alternative ground for affirmance that "the claimed highway defects were not, as a matter of law, the sole proximate causes of the subject accident." See Practice Book § 84-11. Because we conclude that the Appellate Court properly reversed the judgment of the trial court on the ground that the plaintiff's complaint failed to state a claim under § 13a-144, we do not reach the merits of the defendant's alternative ground for affirmance.

[6] Earlier in the proceedings, the trial court, *Graham, J.*, granted the defendant's motion to consolidate this action, pursuant to Practice Book § 9-5, with the related action in *Cummings* v. *Dept. of Transportation*, Superior Court, judicial district of Hartford, Docket No. CV-07-5011774-S (September 29, 2011). The trial court, *Sheldon, J.*, therefore issued a memorandum of decision that disposed of the defendant's motions to dismiss and/or for summary judgment in both cases.

[7] The defendant appealed from the trial court's judgment in both the present case and *Cummings* v. *Dept. of Transportation*, Superior Court, judicial district of Hartford, Docket No. CV-07-5011774-S (September 29, 2011). See *Cummings* v. *Dept. of Transportation*, 142 Conn. App. 843, 68 A.3d 123 (2013). The Appellate Court consolidated the two appeals for oral argument only. Id., 847 n.2.

[8] In her main appellate brief, the plaintiff argues that the trial court did not construe the complaint to allege that *solely* the steep downhill grade rendered the road defective. "The plaintiff submits, however, that her disagreement on this issue is ultimately irrelevant given the Appellate Court's recognition of the plaintiff's actual defect claim, which involves a defective road design and/or layout *combined with* the absence of adequate warning signs and other safety measures on or attached to the roadway." (Emphasis added.)

[9] For the purposes of oral argument only, this court consolidated the present case and the related certified appeal in *Cummings* v. *Dept. of Transportation*, 313 Conn. , A.3d (2014).

[10] To the extent that the plaintiff alleges that the defendant's deficient conduct regarding the training of its employees, the inspection and maintenance of the roadway, and the adherence to proper procedures constitutes an actionable highway defect pursuant to § 13a-144, we conclude that the Appellate Court properly determined that these alleged deficiencies are not cognizable defects under the highway defect statute. *Stotler* v. *Dept. of*

*Transportation*, supra, 142 Conn. App. 841–42. Indeed, none of these allegations relates to the existence of "[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 273. Therefore, these allegations do not support a claim for liability under the defective highway statute.

[11] In her brief, the plaintiff states: "While it is true that the complaint does not specify the extent of Route 44's grade, and also true that the plaintiff's expert testified that he did not regard the 10 [percent] grade of the highway as per se or necessarily defective when standing alone, *that condition cannot be considered in isolation* because it provides the essential context through which the defects expressly claimed by the plaintiff must be viewed." (Emphasis added.)

During oral argument before this court, the plaintiff averred that the alleged defect is comprised of a combination of factors, rather than the downhill grade standing alone:

"The Court: What is the highway defect?

"The Plaintiff's Counsel: A combination of things. Number one is Route 44 has a 10 percent grade.

"The Court: Is that a defect?

"The Plaintiff's Counsel: In part.

"The Court: How?

"The Plaintiff's Counsel: Because it does not incorporate the intrinsic portions of the defect with proper safety applications . . . including a runaway ramp. . . .

"The Court: So it's not the 10 percent grade; it's something in addition to the 10 percent grade?

"The Plaintiff's Counsel: Right, it's a package of facts that lead to the defect in this case. It's not one thing."

[12] In *Hoyt* v. *Danbury*, supra, 69 Conn. 347, the plaintiff brought an action against the city after he fell on stairs that were built into the side of a hill that formed part of a municipal sidewalk. After a bench trial, the trial court found that the stairs were defective because they were too steep and, accordingly, rendered judgment for the plaintiff. Id., 349–50. On appeal, this court reversed the judgment of the trial court. Id., 354.

The court reasoned that if the plan of construction were so inadequate that the sidewalk was "out of repair from the beginning"—for instance, if the sidewalk "had been left with its grade broken simply by a four foot wall, without the provision of steps, or had the steps provided been insecure, or unguarded by a proper railing," then the plaintiff might have a viable claim. Id., 352. The trial court had found, however, that "the steps leading from one grade to the other were not defective, either in material or manner of construction, nor out of repair, at the time of the plaintiff's injury." Id. We concluded that, because the stairs were properly constructed and in good repair, the municipality's decision regarding the design of the walkway "was not subject to review by the courts." Id.; see id., 351 ("the Superior Court had the right to determine whether [the stairs] were properly constructed and in good repair, but not to pronounce the walk defective because [they were] not built on an unbroken grade"); id., 352 ("The use of steps in a city . . . sidewalk is one of several permissible means of overcoming a steep grade. . . . It was for the municipal authorities to decide whether it was the best means of constructing this particular walk; and their decision was not subject to review by the courts." [Citation omitted.]).

While it is true that the court in *Hoyt* intimated that a sidewalk "unguarded by a proper railing" might be defective by design; id.; we do not agree with the dissent that "[a] road with an extremely steep downhill grade that is traversed by large trucks, without warning signs and with no truck runoff is defective in the same way that a staircase with no railing is defective." Whereas § 13a-144 expressly waives sovereign immunity for injuries arising from the "lack of any railing or fence on the . . . part of such road which may be raised above the adjoining ground so as to be unsafe for travel," the statute does not similarly waive sovereign immunity for the failure to incorporate other safety measures, such as warning signs and a runaway truck ramp, into the roadway.

In this regard, we find the court's analysis in *Hewison* v. *New Haven*, 34 Conn. 136, 141–42 (1867), instructive: "It seems to have been a matter of doubt whether a bridge, or a part of the highway raised above the adjoining ground, although dangerous, was defective; and hence a railing was expressly required at such places, for the purpose of protecting the '*safety of travelers.*' Here then was one danger specially provided for. The legislature must have been aware that other dangers existed, or might exist, and yet they made no provision for them. What is the inference? Not only that they did not suppose that the language used was broad enough to embrace every possible danger, but also that they did not intend to make [the state] liable in cases

not expressly provided for. We ought not therefore to extend this statute by construction." (Emphasis in original.) Because this court has expressly repudiated the notion that "everything which renders a highway unsafe makes it defective within the meaning of [§ 13a-144]"; id., 141; we respectfully disagree with the dissent that *Hoyt* "stands for the proposition that a road may be defectively designed when it is inherently unsafe."

[13] Most of the case law that the plaintiff cites in support of her claim is either inapposite to the issue at bar because the court did not decide whether the alleged defect properly invoked § 13a-144; see *Filippi* v. *Sullivan*, 273 Conn. 1, 8–11, 866 A.2d 599 (2005) (resolving issue of whether motorist's written notice to Commissioner of Transportation, as required by § 13a-144, was insufficient as matter of law); *White* v. *Burns*, supra, 213 Conn. 323–28 (resolving issue of whether § 13a-144 requires proof that alleged highway defect was sole proximate cause of plaintiff's injuries); or it is factually distinguishable from the present case. See *Priore* v. *Longo-McLean*, 143 Conn. App. 249, 257, 70 A.3d 147 (2013) (alleged defect was unmarked construction area resulting in narrow, uneven road surface with raised and exposed catch basin); *D'Arcy* v. *Shugrue*, 5 Conn. App. 12, 16, 496 A.2d 967 (alleged defect was absence of metal beam divider along median of highway separating eastbound and westbound traffic), cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985); see also footnote 14 of this opinion (noting that § 13a-144 specifically provides for cause of action for absence of divider along raised highway). This authority does not warrant extended discussion in this opinion.

In the dissent's view, the allegations in the present case are similar to those in *Filippi* v. *Sullivan*, supra, 273 Conn. 4–5 n.3, wherein the claimed defect was insufficient warning signs alerting motorists to a lane closure along a stretch of highway with a graded blind curve that concealed stopped traffic. The issue in *Filippi*, however, was whether the Appellate Court had improperly concluded that the plaintiff's notice to the Commissioner of Transportation describing where the injury had occurred, as required by § 13a-144, was inadequate as a matter of law because it did not contain a reasonably definite description of the location of the injury. Id., 7–8. Because the court in *Filippi* did not examine whether the allegations properly invoked the defective highway statute, we respectfully disagree with the dissent that *Filippi* is relevant to our analysis in the present case.

[14] We note that § 13a-144 expressly waives sovereign immunity for injuries arising from the "lack of any railing or fence on the . . . part of such road which may be raised above the adjoining ground so as to be unsafe for travel . . . ." The statute, however, does not similarly waive sovereign immunity for the failure to incorporate other safety measures into the roadway.

[15] To the extent the plaintiff relies on the trial court's reasoning distinguishing *McIntosh* from the present case, we disagree with that analysis. In its memorandum of decision, the trial court reasoned as follows: "Unlike the rocky ledge high above the roadway in *McIntosh*, by contrast, which was not built into the roadway and was thus not an intrinsic defect in it which actually obstructed travel upon it or hindered its use, [the 10 percent] downhill grade built into the relevant section of Route 44 has been claimed and may be shown by the [plaintiff] to constitute such an intrinsic defect, which, when trucks use the roadway, creates an unacceptable risk of brake failure, even in trucks with working brakes, and ensuing runaways, collisions with other vehicles, and resulting injuries and losses."

We find the trial court's analysis misguided in light of the governing legal principles. This court has consistently held that "[t]he state is not an insurer of the safety of travelers on the highways which it has a duty to repair. Thus, it is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether or not the state has exercised reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 269; see also *Hewison* v. *New Haven*, supra, 34 Conn. 141 ("[w]e are not prepared to establish the doctrine that everything which renders the highway unsafe makes it defective within the meaning of this [highway defect] act").

The trial court's observation that the downhill grade built into the roadway "may be shown by the [plaintiff] to constitute such an intrinsic defect, which . . . create[d] an unacceptable risk of brake failure" ignores that the defect must actually be in, upon, or near the roadbed so as to necessarily obstruct travel thereon. Indeed, as we stated in *McIntosh* v. *Sullivan*, supra, 274 Conn. 289, "the legislature has elected to waive sovereign immunity with respect to the repair and maintenance of the state's highways only when the defective condition is in or so near the roadway that it actually obstructs travel and the Commissioner of Transportation has reasonable notice thereof."

Apart from the *design* of the road, that is, the steep downhill grade and

lack of adequate safety measures, the plaintiff does not allege an actionable hazard in or near the road that necessarily obstructed travel thereon. Rather, the plaintiff claims that the state is liable for damages because it constructed a road across a steep mountain without certain identified safety measures and, in so doing, created an unreasonable risk of catastrophic brake failure. The plaintiff's claim falls squarely within our analysis in *McIntosh* barring such a claim. See id., 288–89 ("[T]he highway defect statute does not give rise to a cause of action sounding in general negligence. . . . Although the rocks and debris that struck the plaintiff's automobile in the present case may have posed an unreasonable danger to travelers on the road, such that the [defendant Commissioner of Transportation's] failure to remove them arguably was negligent, any such negligence was manifestly insufficient to support a claim under the highway defect statute." [Citation omitted.]).

[16] The dissent is doubtful that we would reach the same decision in the present case had the alleged design defect been "an inherently dangerous 30 percent slope" as opposed to a 10 percent slope. The issue that we must decide in the present case, however, does not depend on the extent of the downhill grade. Assuming that the downhill grade, however steep, may be proved by the plaintiff to present an unacceptable risk of brake failure in trucks, the issue we must decide is whether that alleged defect falls within the purview of the defective highway statute. We conclude that it does not. "[A] public authority acts in a quasi-judicial or legislative capacity in adopting a plan for the [construction] of its streets or highways and ordinarily will not be liable for consequential damages for injuries due to errors or defects in the plan adopted." *Donnelly* v. *Ives*, supra, 159 Conn. 168; see *Hoyt* v. *Danbury*, supra, 69 Conn. 351 ("[a] defect in the plan upon which [a] highway [is] constructed . . . [does] not [come] within the [defective highway] statute"). The defendant's decision to adopt a plan for the construction of Route 44 across Avon Mountain, and its decision regarding the safety measures necessary to ensure the safety of motorists thereon, is not subject to collateral review by this court.

[17] Aside from *Perrotti*, it appears that there are only two other cases in which this court has acknowledged a cognizable highway design defect claim: *Bovat* v. *Waterbury*, 258 Conn. 574, 783 A.2d 1001 (2001); and *Federman* v. *Stamford*, 118 Conn. 427, 172 A. 853 (1934). Like *Perrotti*, each of these cases is factually distinguishable from the present case.

In *Bovat*, the plaintiff brought an action against the city of Waterbury under the municipal defective highway statute, General Statutes § 13a-149, for injuries he sustained when his car struck a utility pole that was located a short distance from the edge of the road. *Bovat* v. *Waterbury*, supra, 258 Conn. 578. The plaintiff alleged that the defendant's defective design and maintenance of the highway caused his injuries in that, inter alia, "the road was designed with an extremely sharp curve with a utility pole placed at the apex of the curve at the edge of the roadway, thereby creating a dangerous and hazardous condition . . . ." Id., 579. The jury found in favor of the plaintiff with respect to both the design defect and improper maintenance claims, and the trial court rendered judgment in accordance with the verdict. This court affirmed the judgment of the trial court. Id., 582, 602.

In *Federman*, the plaintiff brought a highway defect claim for injuries she sustained when a sewer manhole cover in the street became unseated and struck the wheels of her car, causing her to crash into a telephone pole. *Federman* v. *Stamford*, supra, 118 Conn. 428. The plaintiff alleged that the cover was defectively designed because "the cover was lower than the frame, which was set flush with the street [and] it fitted so loosely in the frame that it was easily dislodged . . . ." Id. The jury rendered a verdict for the plaintiff, and the trial court denied the defendant city's motion to set aside the verdict. Id., 430. This court affirmed the judgment of the trial court, concluding "the jury might have reasonably concluded that the cover created, from the moment of its installation, a condition rendering the street not reasonably safe for public travel and that from that moment the street was defective within the meaning of the statute." Id., 429.

*Bovat* and *Federman* are distinguishable from the present case because the alleged defect in each case—the utility pole placed at the apex of the curve in *Bovat*, and the loosely fitting sewer manhole cover in *Federman*—was an object in or near the roadway that necessarily impeded travel thereon. In the present case, by contrast, the steep downhill grade, together with the absence of tangible safety measures, does not constitute an object or condition in or near the roadway that necessarily obstructed travel thereon. Accordingly, the plaintiff's claim must fail.

To the extent that the dissent relies upon *Rusch* v. *Cox*, 130 Conn. 26, 31 A.2d 457 (1943), we find that case factually distinguishable from the present case. In *Rusch*, the plaintiff, Andrew J. Rusch, administrator of the estate of Frederick A. Rusch (decedent), brought an action against the highway commissioner after the decedent was killed when the vehicle in which he was a passenger struck a wooden fence along the shoulder of the road. Id.,

29–30. At the point of the collision, the wooden fence narrowed the shoulder from approximately eight feet to four feet in width. Id., 29. The trial court concluded that the sudden and substantial change in the position of the fence created a dangerous condition in the highway. Id., 30. On appeal, this court affirmed the trial court's judgment. Id., 36.

*Rusch* is distinguishable from the present case because the wooden fence that was constructed so as to narrow, unexpectedly, the shoulder from eight to four feet constituted "[an] object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ." *Hewison* v. *New Haven*, supra, 34 Conn. 142. Acknowledging *Hewison*, the trial court determined that the fence narrowing the shoulder constituted a condition near the road that rendered public travel thereon not reasonably safe. See *Rusch* v. *Cox*, 10 Conn. Supp. 521, 526 (1942) ("the highway was not reasonably safe . . . . [because] the layout was such as almost to amount to a trap for those, who in the night season, might drive upon the shoulder for emergency use"). No such condition existed in the present case. The dissent claims that *Rusch* is analogous to the present case because "[i]n both instances, the injury arose simply from the way in which the road was designed, not from some other condition or obstacle on the road itself." In *Rusch*, however, the defectively designed fence was itself an object that obstructed travel and, thus, it was an actionable defect despite the fact that the defect inhered in the highway's plan of design. In the present case, by contrast, the downhill slope in the absence of warning signs pertains solely to the design of the road.

[18] In *Donnelly* v. *Ives*, supra, 159 Conn. 165, the plaintiff brought an action for damages against the highway commissioner after her automobile struck a concrete abutment located along an exit ramp of a state highway. She alleged that the highway was defectively designed due to, inter alia, "inadequate warning devices or signs . . . a poorly designed narrowing of the highway . . . [and] inadequate visibility of the abutment due to the curve in the highway . . . ." Id., 165 n.2. In examining whether the plaintiff's complaint and evidence supported a cause of action under the defective highway statute, this court declined the plaintiff's invitation to "adopt a simple rule that liability be imposed upon the highway commissioner for a [highway] design defect . . . resulting from the [highway's] layout and signing." (Internal quotation marks omitted.) Id., 168. Instead, the court reiterated the principle that the highway commissioner's decision in adopting a plan of design for a highway is not subject to collateral review by this court; id.; and that conflicting expert opinions are insufficient to establish the highway commissioner's failure to discharge its duty to "exercise reasonable care to make and keep [its] roads in a reasonably safe condition for the reasonably prudent traveler." Id., 167.

[19] At oral argument before this court, even the plaintiff agreed that potentially any design defect claim would be actionable under her theory:

"The Court: What design defect that applies directly to the road; a hairpin turn, an exit ramp that is too close to the entrance ramp coming the other way; what kind of design defect would not be actionable [under your theory] when [it] pertains directly to the road?

"The Plaintiff's Counsel: Maybe none, Your Honor."